
Daniel D. Harshman, Esq. (SBN 177139)
COZEN O'CONNOR
425 California Street, Suite 2400
San Francisco, California 94104
Telephone: 415.617.6100
Facsimile: 415.617.6101
Email: dharshman@cozen.com

Attorneys for Plaintiff
ACE CAPITAL LTD on it own behalf and on behalf of
Underwriting members of Syndicate 2488

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ACE CAPITAL LTD on it own behalf and on behalf of Underwriting members of Syndicate 2488<br><br>Plaintiff,<br><br>vs.<br><br>STUBHUB, INC.<br><br>Defendant. | Case No.: C 07 4935<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, ACE CAPITAL LTD on it own behalf and on behalf of Underwriting members of Syndicate 2488 ("ACE"), by its attorneys, Cozen O'Connor, and for its Complaint for Declaratory Judgment against the Defendant, STUBHUB, INC. ("StubHub"), alleges as follows:

## NATURE OF THE CLAIM

Plaintiff, ACE, brings this action pursuant to 28 U.S.C. §2201 and §2202 for declaratory judgment to determine questions of an actual controversy concerning the respective rights and obligations of ACE and StubHub under the Technology, Internet and Media Professional Liability

1

Insurance Policy, Policy Number SF604690Z (the "Policy"), issued by ACE to StubHub. Pursuant to the Policy, StubHub demanded that ACE provide it with a defense with respect to StubHub's involvement in an underlying litigation, *NPS LLC, et al., v. StubHub, Inc., et al.,* Civil Action No.: 06-4874 (Commw. Ct. of Mass) (the "underlying lawsuit").

ACE has no duty to defend or other obligations under the Policy because the Policy's Insuring Agreement is not triggered by the underlying lawsuit, which does not constitute a "claim" for "damages" under the Policy that would trigger ACE's duty to defend. According to the clear language in the Policy, the duty to defend is triggered when there is a "claim." The Policy defines "claim" as a civil proceeding, arbitration, mediation, or written demand for "damages." "Damages" means "a compensatory monetary judgment, award or settlement, other than ... disgorgement of profits ... return or offset of fees, charges, or commissions for goods or services already provided ... punitive or exemplary (unless insurable by law) [or] treble ... damages...." Finally, under the Defense and Settlement of Claims provisions, the Policy states that ACE "have the right and duty to defend, subject to the Limit of Liability, Exclusions, and other terms and conditions in this Policy, any **claim** against [StubHub] seeking **damages**...."

The only damages sought by the underlying claimants are a permanent injunction precluding StubHub from selling New England Patriots football game tickets and the establishment of a constructive trust containing the trebled amount of StubHub's past revenues generated by sales of New England Patriots football game tickets. These claimed damages are not covered "damages" under the Policy. As such, the underlying lawsuit is not a "claim" and there is no trigger of ACE's duty to defend StubHub in the underlying litigation.

## PARTIES

1. ACE is a United Kingdom corporation that operates through an insurance syndicate at Lloyd's, and is authorized and registered by the Financial Services Authority of the United Kingdom. ACE's principal place of business is in London, England.

2. StubHub is believed to be a Delaware corporation with its principal place of business in San Francisco, California. According to its website, www.stubhub.com, StubHub "enable fans to

buy and sell tickets at fair market value to a vast selection of sporting, concert, theater and other live entertainment events, even those that are 'sold out.'" Further, StubHub "provides all fans the choice to buy or sell their tickets in a safe, convenient, and highly reliable environment."

### JURISDICTION, VENUE AND INTRA-DISTRICT ASSIGNMENT

3. The Court has jurisdiction over this controversy pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties. ACE is a United Kingdom corporation with its principal place of business in London, England, and StubHub is a Delaware corporation with its principal place of business in San Francisco, California. Further, as StubHub already has incurred costs defending the underlying litigation which it has asked ACE to reimburse that are well in excess of $75,000, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391. The named policyholder under the Policy, StubHub, maintains its principal place of business in this District and a substantial part of the events giving rise to the claims at issue occurred in this District.

5. Intra-district assignment to the San Francisco Division of the Northern District of California is proper under Local Rule 3-2(c) as this civil action arises in the county in which a substantial part of the events which give rise to this claim occurred, and because this civil action is not an excepted category to the Court's Assignment Plan.

### FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS

**The Underlying Complaint**

6. On November 21, 2006, the underlying claimants, NPS LLC ("NPS") and New England Patriots, L.P. ("NEP"), commonly referred to as the "underlying claimants", filed suit in Massachusetts state court against StubHub, a former season ticket holder, a former member of the season ticket wait list, and John Does 1-50. A copy of the underlying complaint is attached hereto and marked as Plaintiff's Exhibit A.

7. NPS is believed to a Delaware limited liability company with its principal place of business in Foxborough, Massachusetts. NPS is believed to own Gillette Stadium, the home field of

3

the New England Patriots football team and is the issuer of premium seating tickets to Patriots home football games. NEP is believed to be a Delaware limited partnership with a principal place of business in FoxBorough, Massachusetts. Further, NEP is believed to be an issuer of general admission and season tickets to New England Patriots football games.

8. The underlying claimants allege that StubHub's unlawful resale of premium seating and season tickets to New England Patriot football games "sabotages [the Patriots'] efforts to provide a safe, fan-friendly, affordable environment by failing to disclose material information" in contravention to Massachusetts law. (See Ex. A, paragraphs 31-48). Further, underlying claimants allege that StubHub's conduct violates or induces others to violate Massachusetts Anti-Scalping Law through the unlicensed resale of these tickets at prices that grossly exceed the face value of the tickets. The underlying claimants assert that StubHub's illegal ticket resale activity causes harm to consumers and undermines the Patriots' goodwill with their fans. (See Ex. A, paragraphs 49-58).

9. Based on these allegations, the underlying claimants assert the following causes of action against StubHub: (1) intentional interference with advantageous relations (including a claim that StubHub trafficked in fraudulent sales); (2) misappropriation of name under Massachusetts statute; and (3) unfair trade practices act violations. (See Ex A, paragraphs 59-77). NPS also asserts several causes of action against the two individual defendants and 50 unnamed Patriots season ticket holders (hereafter "the season ticket holders") allegedly engaged in the resale of Patriots tickets through StubHub. (See Ex A, paragraphs 78-94). Finally, the underlying claimants assert a claim for the establishment of a constructive trust against all defendants. (See Ex A, paragraphs 95-99).

10. The Patriots seek only two elements of damages against StubHub: (1) a permanent injunction barring StubHub from "the illegal and unauthorized resale of Patriots tickets" and (2) the establishment of "a constructive trust containing three times the revenues defendants improperly received and any amount by which defendants were unjustly enriched." (See Ex A, page 18, the WHEREFORE clause).

**The Policy**

4

11.     ACE issued policy number SF604690Z to StubHub for the period effective May 1, 2006 to May 1, 2007. The Limit of Liability for this Policy is $3,000,000 in the aggregate including Claims Expenses. The deductible is $75,000 for each claim including Claims Expenses. A copy of the Policy is attached hereto and marked as Plaintiff's Exhibit B.

12.     The Policy is a "claims made and notified" policy that limits liability only to those claims that are first made and notified to ACE during the policy period or any extended reporting period, arising from any circumstances which took place on or after any retroactive date specified in the schedule and before the expiry date of the policy period. The Insuring Agreement (Section I) of the Policy provides that:

> We shall pay on **your** behalf all **damages** and **claims expenses** within the Limit of Liability in excess of **your** Deductible which **you** become legally obliged to pay as a result of any **claim** arising from any **wrongful act** first made against **you** and notified by **you** to **us** in writing during the **policy period** or any Extended Reporting Period.

13.     The Policy wordings at the core of this coverage dispute are the Insuring Agreement quoted above, including the definitions of "claim" and "damages." The definitions of "claim" and "damages" are provided in Section III. Definitions, paragraphs 2 and 6, respectively, which state in relevant part as follows:

> **Claim** means
> (a) a civil proceeding for **damages** commenced by the filing of a complaint or similar pleading; or
> (b) an arbitration or mediation proceeding in which **damages** are sought; or
> (c) a written demand for **damages**; or
> (d) notice by a third party by **you** of circumstances that could reasonably be expected to result in any of the foregoing;
>
> * * * *
>
> **Damages** means a compensatory monetary judgment, award or settlement, other than;
> (a) **your** future royalties or future profits, restitution, disgorgement of profits, or the costs of complying with orders granting injunctive relief;
> (b) return or offset of fees, charges, or commissions for goods or services already provided or contracted to be provided;
> (c) punitive, exemplary (unless insurable by law), treble or other damages that are assessed in part to punish the defendant or to deter others;
>
> * * * *

14. Under the definitions contained in the Policy and quoted above, in order for a "claim" to be made under the Policy, a claimant must seek "damages" of a kind that fall within the Policy's specific definition of the "damages" that are included within the scope of the Policy's coverage grant.

15. In addition to the above Policy language, Section II. Defense and Settlement of Claims, sets forth ACE's rights and duties in the event of a "claim." Section II provides as follows:

(a) It is **our** duty to defend a **claim** against **you** even if such **claim** is groundless or fraudulent however **our** right and duty to defend **you** under this Policy ends when the applicable Limit of Liability has been exhausted by payments of **damages** or **claims expenses**.

(b) **We** have the right and duty to defend, subject to the Limit of Liability, Exclusions, and other terms and conditions in this Policy, any **claim** against **you** seeking **damages** including injunctive or other non-monetary relief first made against **you** and notified to **us** during the **policy period** or any Extended Reporting Period, for any **wrongful act** first committed by **you** on or after any **retroactive date** and before the end of the **policy period**.

(c) **You** may not make any payment (except at **your** own cost), assume any obligation, or incur any expense in relation to a **claim** without **our** written consent, provided that such consent may not be unreasonably withheld. Only reasonable and necessary costs will be paid.

(d) **We** have the right to select and appoint defense counsel to defend any **claim** notified under this Policy. If **you** have appointed defense counsel, at **our** request **you** shall instruct them to turn over all their relevant files, materials and work product and co-operate with counsel who **we** select and appoint as defense counsel.

(e) **We** have the right to investigate and settle any **claim** in the manner and to the extent that **we** believe is proper unless the total cost of **damages** and **claims expenses** is less than the amount remaining within **your** Deductible. If **you** refuse to consent to any settlement or compromise recommended by **us** which is also acceptable to the claimant and then elect to contest the **claim, our** liability for any **damages** and **claims expenses** shall not exceed the amount for which the **claim** could have been settled, less the remaining Deductible, plus the **claims expenses** incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and **we** shall have the right to withdraw from further defense by tendering control of said defense to **you.**

16. The Choice of Law provision in the Policy (Section V. General Conditions, subsection H) provides as follows: "For all purposes, this Policy shall be interpreted according to

the law in Illinois which conflict of law principles shall not be used to adopt the law of other states in the United States."

17. Finally, the Policy contains a Dispute Resolution provision (Section V. General Conditions, subsection N). This provision provides as follows:

> The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Policy promptly by negotiation. If the dispute has not been resolved by negotiation within forty-five (45) days of the disputing party's notice, either party may demand that the dispute be submitted for non-binding resolution under the then current CPR Model Mini-Trial Procedures in effect on the date of this agreement. Unless otherwise agreed, the parties will select a mini-trial neutral advisor from the CPR Panels of Neutrals and shall notify CPR and request CPR to initiate the selection process. All applicable statutes of limitations and defenses based upon the passage of time shall be tolled while the procedures specified herein are pending. The parties will take such action, if any, required to effectuate such tolling.
>
> The parties agree that no suit will be filed by either party against the other party seeking resolution of any dispute arising out of or relating to this Policy until the parties have (1) attempted to negotiate a resolution, (2) completed the non-binding CPR Mini-Trial proceeding through decision, and (3) thirty days have elapsed since the conclusion of the non-binding CPR Mini-Trial proceeding

18. Instead of proceeding with the CPR Mini-Trial proceedings set forth in the Policy, the parties agreed to pursue mediation. However, the parties agreed that all other terms in the Dispute Resolution provision remain in effect.

**Notice of the Claim and ACE's Reservation of Rights**

19. StubHub provided notice of this lawsuit to ACE on November 28, 2006.

20. Following ACE's initial investigation of this matter, on January 12, 2007, ACE issued a reservation of rights letter to StubHub. This correspondence advised StubHub that ACE's investigation of this situation is continuing, that ACE generally reserves all of its rights, remedies, and defenses, and that there are certain aspects of this matter that may not be covered under the Policy. A copy of ACE's January 12, 2007 coverage correspondence is attached hereto and marked as Plaintiff's Exhibit C.

21. After further investigation and analysis, on May 3, 2007, ACE issued supplemental coverage correspondence. ACE advised StubHub that the Policy does not provide coverage for the

underlying claimants' lawsuit because the underlying complaint does not allege a "claim" or "damages" as those terms are defined in the Policy, since the underlying claimants only seek uncovered damages, or permanent injunctive relief and the establishment of a constructive trust containing three times the amount of StubHub's revenues. Therefore, ACE informed StubHub that ACE's right and duty to defend under the Policy was not triggered by the underlying lawsuit. A copy of ACE's May 3, 2007 supplemental coverage correspondence is attached hereto and marked as Plaintiff's Exhibit D.

22. Nevertheless, in good faith, ACE stated that it would continue to pay StubHub's reasonable defense costs in accordance with the Policy, ACE's Litigation Management Guidelines, and prior telephone and email communications with StubHub until the coverage issues are resolved. ACE informed StubHub that unless it were to withdraw this claim, ACE would invoke the Policy's dispute resolution provision, set forth in Section N of the Policy. ACE also reserved its right to recoup defense costs if it ultimately is determined that ACE had no duty to defend or indemnify StubHub. (See Ex D).

**StubHub's Response to ACE's Coverage Position**

23. On June 14, 2007, StubHub responded and objected to ACE's coverage position. A copy of StubHub's response to ACE's coverage position is attached hereto and marked as Plaintiff's Exhibit E.

24. In its June 14, 2007 correspondence, StubHub argued that this matter constitutes a "claim" or circumstances that could give rise to a "claim" since each cause of action asserted against StubHub in the underlying complaint "*potentially* seeks the recovery of damages." StubHub also asserted that ACE withdrew its defense and denied coverage and that StubHub was prejudiced by this alleged conduct. (See Ex E).

**ACE's Reply to StubHub's Response/Objections**

25. On June 20, 2007, ACE replied to StubHub's response. A copy of ACE's June 20, 2007 reply correspondence is attached hereto and marked as Plaintiff's Exhibit F.

8

26. In its June 20, 2007 correspondence, ACE restated its coverage position that the underlying complaint against StubHub does not allege a "claim" or "damages" as those terms are defined in the Policy. Regarding StubHub's assertion that the underlying complaint "potentially seeks the recovery of damages," ACE advised that StubHub failed to recognize that the term "damages" has a specific meaning under the Policy, and that based on the express Policy definition, the underlying complaint fails to seek any damages that potentially could fall within the Policy's coverage grant. Further, ACE stated that not only is the case law relied on by StubHub factually distinguishable, but the cases cited by StubHub are inapplicable because they do not interpret or otherwise apply the specific and unique Policy wording at issue here, which has never been interpreted by a court of law. As for StubHub's comments concerning ACE's alleged conduct, ACE reminded StubHub that it has acted in good faith throughout this dispute, and has agreed to continue defending StubHub pending resolution of the coverage dispute. ACE also disputed StubHub's assertion that StubHub somehow has been prejudiced by ACE's conduct, since StubHub has not been denied effective counsel and has never been asked by ACE to alter or forego any of its defense or settlement strategies. (See Ex F).

**Parties Comply with the Policy's Dispute Resolution Provisions**

27. On August 24, 2007, a non-binding mediation proceeding was conducted in Chicago, Illinois, pursuant to the terms of the Policy and agreement of ACE and StubHub. The mediation was unsuccessful, and did not result in a settlement of the coverage dispute between the parties.

28. The Policy calls for a 30 day "cooling off" period following the conclusion of the dispute resolution proceedings. During this time period, the parties made additional attempts to resolve this dispute. This 30 day "cooling off" period expired on September 24, 2007. Unable to reach resolution, ACE now brings this action for a declaration of rights under the Policy.

## DECLARATORY RELIEF

## CLAIM OUTSIDE OF GRANT OF COVERAGE

29. ACE restates and re-alleges Paragraphs 1 through 29 as and for its paragraph 30 of its claim for Declaratory Relief as though fully set forth herein.

9

30. StubHub seeks professional liability insurance coverage from ACE as provided by Policy Number SF604690Z with regard to StubHub's involvement in the underlying lawsuit.

31. The Policy's Insuring Agreement provides in relevant part that ACE shall pay StubHub all "damages" and "claims expenses" within the Limit of Liability in excess of StubHub's deductible, which StubHub becomes legally obligated to pay as a result of any "claim" arising from any "wrongful act" first made against StubHub and notified to ACE during the policy period. Thus, to fall within the scope of the Policy's coverage grant, a "claim" for "damages" as those terms are defined in the Policy, must be presented.

32. The Policy defines "claim" as a civil proceeding, arbitration, mediation, or written demand for "damages." Thus, under the Policy's definition of "claim," no "claim" exists unless the underlying claimant seeks "damages" as specifically defined in the Policy.

33. The Policy defines "damages" as "a compensatory monetary judgment, award or settlement, other than ... disgorgement of profits ... return or offset of fees, charges, or commissions for goods or services already provided ... punitive or exemplary (unless insurable by law) [or] treble ... damages...."

34. The only damages sought in the underlying lawsuit by the underlying claimants are: (1) a permanent injunction; and (2) the establishment of a constructive trust containing the trebled amount of StubHub's past revenues. Thus, the damages claimed in the underlying lawsuit do not fall within the scope of specifically defined "damages" for which the Policy grants coverage.

35. The constructive trust containing the trebled amount of StubHub's past revenues sought by the underlying claimants expressly is not included within the specifically defined "damages" for which the Policy grants coverage, because the Policy clearly provides that "damages" do not include any restitution, disgorgement of profits, the return of fees, charges, or commissions, and/or punitive, exemplary, or treble damages.

36. The injunctive relief sought by the underlying claimants similarly is not included within the specifically defined "damages" for which the Policy grants coverage, because injunctive relief does not constitute a "compensatory monetary judgment, award or settlement."

37. Because neither the injunctive relief nor the constructive trust sought by the underlying claimants constitute the specifically defined "damages" for which the Policy grants coverage, the underlying lawsuit does not constitute a "claim" for "damages" that would trigger ACE's duty to defend the underlying lawsuit.

38. Accordingly, ACE requests a declaration of its rights and obligations under the Policy, and specifically requests a determination that it owes no duty to defend or indemnify StubHub in connection with the underlying lawsuit, because the underlying lawsuit does not constitute a "claim" for "damages", and as such, the Policy is not obligated to respond.

WHEREFORE, the Plaintiff, ACE CAPITAL LTD on it own behalf and on behalf of Underwriting members of syndicate 2488, requests this Court to enter an Order granting the following relief:

A. Declaring the respective rights and obligations, if any, of the parties under the Policy at issue;

B. Declaring that ACE does not have any obligation to defend or indemnify StubHub under the Policy with regard to the underlying lawsuit;

C. Awarding all costs and disbursements of this action, including reasonable attorney's fees incurred by ACE;

D. Ordering StubHub to reimburse ACE for all defense costs paid to StubHub pending resolution of this coverage dispute; and

E. Awarding any and all other relief this Court deems appropriate and just.

Dated: September 24, 2007

Respectfully submitted,

COZEN O'CONNOR

Daniel D. Harshman
Counsel for ACE CAPITAL LTD
on it own behalf and on behalf of Underwriting members of Syndicate 2488

11

## DEMAND FOR JURY TRIAL

ACE Capital Limited on its own behalf and on behalf of Underwriting members of Synidcate 2488 demands a trial by jury on all issues so triable.

Dated: September 24, 2007

Respectfully submitted,

COZEN O'CONNOR

_____
Daniel D. Harshman
Counsel for ACE CAPITAL LTD
on it own behalf and on behalf of Underwriting members of Syndicate 2488

Of Counsel:

Lori S. Nugent (*Pro Hac Vice Application to be Filed*)
Josh M. Kantrow (*Pro Hac Vice Application to be Filed*)
Beth A. Stroup (*Pro Hac Vice Application to be Filed*)
COZEN O'CONNOR
222 South Riverside Plaza, Suite 1500
Chicago, Illinois 60606
Telephone: 312.382.3100
Facsimile: 312.382.8910
Emails: LNugent@cozen.com, JKantrow@cozen.com and BStroup@cozen.com

SAN_FRANCISCO\42643\1 195933.000

COMPLAINT FOR DECLARATORY JUDGMENT; DEMAND FOR JURY TRIAL