EXHIBIT "B"

COPY



# Lloyd's Policy

**We, Underwriting Members** of the Syndicates whose definitive numbers and proportions are shown in the Table attached hereto (hereinafter referred to as 'the Underwriters'), hereby agree, in consideration of the payment to Us by or on behalf of the Assured of the Premium specified in the Schedule, to insure against loss, including but not limited to associated expenses specified herein, if any, to the extent and in the manner provided in this Policy:

**The Underwriters** hereby bind themselves severally and not jointly, each for his own part and not one for another, and therefore each of the Underwriters (and his Executors and Administrators) shall be liable only for his own share of his Syndicate's proportion of any such Loss and of any such Expenses. The identity of each of the Underwriters and the amount of his share may be ascertained by the Assured or the Assured's representative on application to Lloyd's Policy Signing Office, quoting the Lloyd's Policy Signing Office number and date or reference shown in the Table.

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void and all claim hereunder shall be forfeited.

**In Witness** whereof the General Manager of Lloyd's Policy Signing Office has signed this Policy on behalf of each of Us.



LLOYD'S POLICY SIGNING OFFICE
General Manager

FOR EMBOSSMENT BY
LLOYD'S
POLICY SIGNING
OFFICE
EMBOSSMENT
APPEARS HERE
ON ORIGINAL
DOCUMENT
LLOYD'S POLICY SIGNING OFFICE

J(A)   NMA2421 (3/1/95)  Form approved by Lloyd's Market Association



# LLOYD'S

THE INSURED IS REQUESTED TO READ THIS POLICY. IF IT IS INCORRECT, PLEASE RETURN IT
IMMEDIATELY TO YOUR BROKER OR AGENT FOR ALTERATION.

IN ALL COMMUNICATIONS THE POLICY NUMBER APPEARING OVERLEAF SHOULD BE QUOTED



## NOTICE

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE, AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED

# **Safe**online  **Safe**Enterprise

## Carpenter Moore



Underwritten by ACE Global Markets



ace global markets

### Table of Contents

The Schedule ........................................................................................................... 3

Introductory Clause .................................................................................................. 4

I.  Insuring Agreement ........................................................................................... 4

II.  Defense and Settlement of Claims ................................................................... 4

III.  Definitions ......................................................................................................... 5
    1.  Bodily Injury ................................................................................................ 5
    2.  Claim ............................................................................................................ 5
    3.  Claims Expenses ........................................................................................ 6
    4.  Computer System ....................................................................................... 6
    5.  Computer Virus ........................................................................................... 6
    6.  Damages ...................................................................................................... 6
    7.  Denial of Service ........................................................................................ 6
    8.  Directors and Officers ................................................................................ 7
    9.  Hacker Attack .............................................................................................. 7
    10.  Internet ...................................................................................................... 7
    11.  Policy Period ............................................................................................. 7
    12.  Professional Services ............................................................................... 7
    13.  Property Damage ....................................................................................... 7
    14.  Retroactive Date ....................................................................................... 7
    15.  Subsidiary .................................................................................................. 7
    16.  Theft of Electronic Data ........................................................................... 8
    17.  Trade Secret .............................................................................................. 8
    18.  "We", "Us", "Our" .................................................................................... 8
    19.  Wrongful Act .............................................................................................. 8
    20.  "You", "Your" or "Yours" or Insured .................................................... 9

IV.  Exclusions ......................................................................................................... 10
    A.  Dishonest Acts ........................................................................................... 10
    B.  Insured vs Insured ..................................................................................... 10
    C.  Bodily Injury/Property Damage ................................................................. 10
    D.  Insolvency .................................................................................................. 10
    E.  Management Liability .................................................................................. 10
    F.  Known Losses ............................................................................................. 10
    G.  Prior Notified Losses ................................................................................. 10
    H.  Contractual Liability ................................................................................... 10
    I.  Patent Infringement & Trade Secret ......................................................... 10

V01.05
www.safeonline.com
info@safeonline.com

Page 1 of 26




**Safe**onlin **Safe**Enterprise
Carpenter Moore





Underwritten by ACE Global Markets

ace global markets

J.  Racketeer Influenced and Corrupt Organizations Act ...................................... 11
K.  Federal Trade Commission et al ...................................................................... 11

L.  Employment Practices & Employee Retirement Income Security Act ............... 11
M.  SEC ................................................................................................................ 11
N.  Antitrust ......................................................................................................... 11
O.  Related Parties ............................................................................................... 11
P.  Coupons, Prizes, Discounts ............................................................................ 11
Q.  Inaccurate Description ................................................................................... 11
R.  Digital Certificates ......................................................................................... 12
S.  Internet Infrastructure ................................................................................... 12
T.  Wear and Tear ............................................................................................... 12
U.  Asbestos ........................................................................................................ 12
V.  War and Terrorism ......................................................................................... 12
W.  Fire, Earthquake, and Acts of God ................................................................. 13
X.  Electromagnetism and Radiation .................................................................... 13
Y.  Pollution ........................................................................................................ 13
Z.  Gambling and Pornography ............................................................................ 13

V.  General Conditions ............................................................................................... 13
A.  Limit of Liability ............................................................................................. 13
B.  Deductible ..................................................................................................... 13
C.  Extended Reporting Provisions ....................................................................... 14
D.  Notice/Claims Reporting Provisions ............................................................... 14
E.  Your Duties .................................................................................................... 15
F.  Other Insurance ............................................................................................. 15
G.  Legal Action Against Us ................................................................................. 16
H.  Choice of Law Provision ................................................................................. 16
I.  Subrogation ................................................................................................... 16
J.  Changes ......................................................................................................... 16
K.  Mergers and Acquisitions ............................................................................... 16
L.  Assignment .................................................................................................... 16
M.  Cancellation ................................................................................................... 17
N.  Dispute Resolution ......................................................................................... 17
O.  Service of Suit ............................................................................................... 18



LPSO
VFM

V01.05
www.safeonline.com
info@safeonline.com

Page 2 of 26

Swinglehurst

# **Safe**online **Safe**Enterprise
## Carpenter Moore

 

Underwritten by ACE Global Markets

ace global markets

## The Schedule

| | | |
|---|---|---|
| 1. | Policy number | SF604690Z |
| 2. | Named Insured | Stubhub, Inc |
| 3. | Address of Named Insured | 55 Second Street |
| | | Suite 300 |
| | | San Francisco |
| | | CA 94105 |
| 4. | Policy Period | From:   1st May 2006 |
| | | To:      1st May 2007 |
| | | (both days at 12.01am Local Standard time at the address shown of the Named Insured) |
| 5. | Limit of Liability | The maximum payable under this Policy is |
| | | USD 3,000,000    any one claim and in the aggregate including Claims Expenses |
| 6. | Deductible | USD 75,000    each and every Claim including Claims Expenses |
| 7. | Retroactive Date | 1st March 2001 in respect of primary USD 2,000,000 Limit of Liability but 12th January 2004 in respect of USD 1,000,000 xs USD 2,000,000 |
| 8. | Premium | USD 65,000.00 |
| 9. | Notice of Claim to | Robert W. Hammesfahr |
| | | Cozen O'Connor |
| | | 222 South Riverside Plaza |
| | | Chicago, Illinois 60606-6000, USA |
| 10. | Notice Of Election | Carpenter Moore Insurance Services, Inc. |
| | | 717 Market Street, 7th Floor |
| | | San Francisco, CA 94103, USA |
| 11. | Service of Suit | Sedgwick, Detert, Moran & Arnold |
| | | 3 Park Plaza, 17th Floor |
| | | Irvine, California 92614-8540, USA |
| 12. | Application form dated | 31st March 2006 |
| | Dated in London | 18th July 2006 |

V01.05
www.safeonline.com
info@safeonline.com

Page 3 of 26



Swinglehurst

**Safe**online **Safe**Enterprise  
Carpenter Moore

Underwritten by ACE Global Markets

ace global markets

**Introductory Clause**

THIS POLICY IS A CONTRACT FOR INSURANCE FOR CONSIDERATION BETWEEN YOU AND US.
THE COVERAGE IS PROVIDED AS DESCRIBED BELOW SUBJECT ALWAYS TO OUR RECEIPT OF
THE PREMIUM AND OUR RELIANCE UPON THE STATEMENTS MADE BY YOU IN THE APPLICATION
WHICH FORMS PART OF YOUR POLICY AND THE BASIS OF YOUR INSURANCE COVER. THE
POLICY IS SUBJECT TO THE LIMIT OF LIABILITY, EXCLUSIONS, CONDITIONS AND OTHER TERMS
SET OUT BELOW.

READ THIS POLICY CAREFULLY TO DETERMINE THE EXTENT OF COVERAGE. VARIOUS
PROVISIONS IN THIS POLICY RESTRICT YOUR COVERAGE.

Words and phrases that appear in bold print have special meanings and are defined separately.
Whenever a singular form of a word is used, the same shall include the plural when required by
context.

IMPORTANT:
THIS IS A CLAIMS FIRST MADE AND NOTIFIED POLICY. THIS POLICY IS LIMITED TO LIABILITY FOR
ONLY THOSE CLAIMS THAT ARE FIRST MADE AND NOTIFIED TO US DURING THE POLICY PERIOD
OR ANY EXTENDED REPORTING PERIOD, ARISING FROM ANY CIRCUMSTANCES WHICH TOOK
PLACE ON OR AFTER ANY RETROACTIVE DATE SPECIFIED IN ITEM 7 OF THE SCHEDULE AND
BEFORE THE EXPIRY DATE OF THE POLICY PERIOD .

I.    Insuring Agreement

We shall pay on your behalf all damages and claims expenses within the Limit of Liability in excess of
your Deductible which you become legally obliged to pay as a result of any claim arising from any wrongful
act first made against you and notified by you to us in writing during the policy period or any Extended
Reporting Period.

II.   Defense and Settlement of Claims

(a)  It is our duty to defend a claim against you even if such claim is groundless or fraudulent however our
     right and duty to defend you under this Policy ends when the applicable Limit of Liability has been
     exhausted by payments of damages or claims expenses.

(b)  We have the right and duty to defend, subject to the Limit of Liability, Exclusions, and other terms and
     conditions in this Policy, any claim against you seeking damages including injunctive or other non-

V01.05
www.safeonline.com                    Page 4 of 26
info@safeonline.com

  Swinglehurst

**Safe**online **Safe**Enterprise 

Carpenter Moore



Underwritten by ACE Global Markets



ace global markets

monetary relief first made against **you** and notified to **us** during the **policy period** or any Extended Reporting Period, for any **wrongful act** first committed by you on or after any **retroactive date** and before the end of the **policy period.**

(c) **You** may not make any payment (except at **your** own cost), assume any obligation, or incur any expense in relation to a **claim** without **our** written consent, provided that such consent may not be unreasonably withheld. Only reasonable and necessary costs will be paid.

(d) **We** have the right to select and appoint defense counsel to defend any **claim** notified under this Policy. If **you** have appointed defense counsel, at **our** request **you** shall instruct them to turn over all their relevant files, materials and work product and co-operate with counsel who we select and appoint as defense counsel.

(e) **We** have the right to investigate and settle any **claim** in the manner and to the extent that we believe is proper unless the total cost of **damages** and **claims expenses** is less than the amount remaining within **your** Deductible. If **you** refuse to consent to any settlement or compromise recommended by **us** which is also acceptable to the claimant and then elect to contest the **claim, our** liability for any **damages** and **claims expenses** shall not exceed the amount for which the **claim** could have been settled, less the remaining Deductible, plus the **claims expenses** incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and we shall have the right to withdraw from further defense by tendering control of said defense to **you.**

**III. Definitions**

1. **Bodily Injury** means physical injury, sickness, disease or death of any person.

2. **Claim** means
    (a) a civil proceeding for **damages** commenced by the filing of a complaint or similar pleading; or
    (b) an arbitration or mediation proceeding in which **damages** are sought; or
    (c) a written demand for **damages**; or
    (d) notice by a third party to **you** of circumstances that could reasonably be expected to result in any of the foregoing;

    All **claims** arising out of:
    (a) the same covered event; or
    (b) covered events of one or more **insureds** which have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of connected facts, circumstances, situations, events, transactions, or causes;

    shall be considered a single **claim** regardless of the number of **claims**, claimants, defendants or causes of action. The date when any such **claim** is made will be the date that the first **claim** is made.

V01.05
www.safeonline.com
info@safeonline.com                    Page 5 of 26





Swinglehurst

**Safe**onlin **Safe**Enterprise
Carpenter Moore



Underwritten by ACE Global Markets



ace global markets

3.  **Claims expenses** means;
    (a) fees charged by a lawyer(s) designated by **us** to defend any **claim**, and

    (b) all other reasonable fees, costs and expenses resulting from investigation, adjustment, defense and appeal of a **claim**, suit or proceeding arising in connection therewith, if incurred by **us**, or by **you** with the written consent of **us**.

    **Claim** expenses do not include any salaries, overheads or other charges **you** incur for any time **you** spent in cooperating in the defense and investigation of any **claim** or circumstance which might lead to a **claim** under this Policy.

    **Claim** expenses are part of and not in addition to the Limit of Liability.

4.  **Computer system** means electronic, wireless, web or similar systems (including all hardware and software) used to process data or information in an analogue, digital, electronic or wireless format including computer programs, electronic data processing media, electronic data, electronic data communications equipment, operating systems, computer network and networking equipment, firmware, servers, web sites, extranet, and all input, output, processing, storage and on-line or off-line media libraries, music, graphic, entertainment and other content (to the extent that they hold electronic data).

5.  **Computer virus** means computer instructions placed on a **computer system** without the owner or user's knowledge or consent that are designed to harm, impede, corrupt, erase, remove, disrupt or destroy the **computer system**, electronic data or software (or any part of them). **Computer virus** includes malicious codes, malware, trojan horses, worms, and time or logic bombs.

6.  **Damages** means a compensatory monetary judgement, award or settlement, other than;
    (a) **your** future royalties or future profits, restitution, disgorgement of profits, or the costs of complying with orders granting injunctive relief;
    (b) return or offset of fees, charges, or commissions for goods or services already provided or contracted to be provided;
    (c) punitive or exemplary (unless insurable by law), treble or other damages that are assessed in part to punish the defendant or to deter others;
    (d) damages pursuant to federal, state or local statutory law other than compensatory and those fines related to III. **Definitions 19. Wrongful act(s) (J)**;
    (e) any amounts owed under any express or implied contract; and
    (f) any amounts for which **you** are not liable, or for which there is no legal recourse against **you**.

7.  **Denial of service** means inability of a third party to gain access to **your computer system** through the **Internet** due to unauthorized attacks or deliberate overloading of bandwith connections and/or web servers by means of the sending of substantial quantities of repeat or irrelevant communication or data with the intent of blocking access to the **computer system** by third parties.

V01.05
www.safeonline.com
info@safeonline.com

Page 6 of 26




Swinglehurst

**Safe**online  **Safe**Enterprise 
Carpenter Moore



Underwritten by ACE Global Markets

ace global markets

8. **Directors and officers** mean all persons who were, or shall be directors or officers and all persons serving in a functionally equivalent role for the Parent Company, or any Subsidiary.

9. **Hacker attack** means unauthorized use of or gaining access to **computer systems** by a person not authorized to do so or in an unauthorized manner.

10. **Internet** means the worldwide public network of computer networks which enables the transmission of electronic data between different users.

11. **Policy period** means the period of insurance stated in item 4 of the Schedule.

12. **Professional services** means **your** professional activities which are performed for and on behalf of **your** clients or customers in the course of **your** business arising from activities, advice or products relating to information technology, **computer systems**, communications and media services utilizing the **Internet**; services include consulting, help desk related activities, training, data caching, data collecting, data storage, database designing, data processing, testing, mining and analysis, software programming, researching, systems integration or development, design, installation, repair, outsourcing or maintenance of computer or telecommunication equipment, products and components, networks or systems including Internet Service Providers and portals and exchanges; software code and security services including Active Server Pages; analyzing, digesting, collecting, compiling, gathering, mining, recording or other use of materials on the **Internet** including the advertising, broadcasting, marketing, directing, digitalizing, net casting, producing, publishing, researching, selling, disseminating, releasing or using materials on the **Internet** and related telemarketing, customer support and similar services.

13. **Property damage** means injury to, impairment, destruction, corruption or distortion of any tangible property, including the loss of use thereof or loss of use of tangible property which has not itself been physically impaired, injured or destroyed.

14. **Retroactive date** means the date specified in Item 7 of the Schedule.

15. **Subsidiary** shall mean any corporation of which **you** own on or before the inception date of the **policy period** more than 50% of the issued and outstanding voting stock either directly or indirectly through a subsidiary.

This Policy does not cover any **claim** against a **subsidiary** or any partner, director, officer or employee thereof for any **wrongful act** that occurred when **you** did not own more than 50% of the issued and outstanding voting stock of such **subsidiary**, either directly or indirectly through one or more of its **subsidiaries**.

V01.05
www.safeonline.com
info@safeonline.com

Page 7 of 26





Swinglehurst

# HOWREY LLP

550 South Hope Street
Suite 1100
Los Angeles, CA 90071-2627
www.howrey.com

June 14, 2007

**Keith A. Meyer**
Partner
T 213.892.1810
F 213.892.2300
meyerk@howrey.com
File 07326.0002

**R E C E I V E D**

**JUN 2 1 2007**

**J M K**

BY ELECTRONIC MAIL
AND U.S. MAIL

Josh M. Kantrow, Esq.
Cozen O'Connor
Suite 1500
222 South Riverside Plaza
Chicago, IL 60606-6000

> Re: StubHub, Inc.
> Matter: NPS LLC and New England Patriots, L.P.
> Policy No. SF604690Z
> Your Reference No. 195933

Dear Josh:

As you know, we have been engaged by StubHub, Inc. ("StubHub") in connection with the coverage claims arising from the lawsuit brought by NPS LLC and New England Patriots, L.P. (collectively, the "Patriots") under the policy issued by Certain Underwriters at Lloyds ("Underwriters"), Policy No. SF604690Z (the "Policy"). This letter responds to your letter of May 3, 2007 to Allyson Willoughby in which Underwriters have denied coverage for the above-referenced claim.

The basis for Underwriters' denial of coverage is that the Patriots' lawsuit does not allege either a "claim" or "damages" as those terms are defined in the Policy. In fact, as shown below, the lawsuit itself is a covered claim, and the causes of action alleged against StubHub include damages as an element thereof.

The Policy defines "claim" as, *inter alia*, "(a) a civil proceeding for damages commenced by the filing of a complaint or similar pleading; or . . . (d) notice by a third party to you of circumstances that could reasonably be expected to result in any of the foregoing." Underwriters contend that the lawsuit does not expressly seek the recovery of damages, and thus no "claim" has been asserted under subheading (a) of the definition. Underwriters are mistaken.

Each cause of action alleged by the Patriots against StubHub *potentially* seeks the recovery of damages. This potential is more than sufficient to trigger the Underwriters' duty to defend under the Policy. Under California law, it is well-settled that "a liability insurer owes a broad duty to defend . . . a suit which *potentially* seeks damages within the coverage of the

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON  LOS ANGELES
MUNICH  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

DM_US:20509667_2

**HOWREY** LLP  

Josh M. Kantrow, Esq.
June 14, 2007
Page 2

policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295, 861 P.2d 1153 (1993) (emphasis in original). This duty to defend is excused only when "it has been shown that there is *no* potential for coverage." *Id.* (emphasis in original).

Illinois law is comparable. "An insurer's duty to defend its insured is much broader than its duty to indemnify." *General Agents Ins. Co. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154-55, 828 N.E.2d 1092 (2005). "If the complaint alleges facts within the coverage of the policy or *potentially* within the coverage of the policy the duty to defend has been established." *Clemmons v. Travelers Ins. Co.*, 88 Ill. 2d 469, 476, 430 N.E.2d 1104 (1981) (emphasis in original). The allegations in the complaint and the policy provisions must both be given a liberal construction in favor of coverage. *Country Mut. Ins. Co. v. Carr*, 372 Ill. App. 3d 335, __ N.E.2d __ (2007). "Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204 (1992). Moreover, "all doubts concerning the scope of coverage" must be resolved "in favor of the insured." *Illinois Emasco Ins. Co.*, 337 Ill. App. 3d at 359, 785 N.E.2d 905 (2003) (insurer may refuse to defend only when the complaint precludes the possibility of coverage).

Here, it is abundantly clear that the Patriots suit potentially seeks the recovery of damages from StubHub. Count One alleges a claim for intentional interference with advantageous relations against StubHub. The elements of such a claim are "(1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the [defendant's] knowledge of the contract or business relationship; (3) the [defendant's] intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) *damages.*" *Bourque v. Cape Southport Assocs., LLC*, 60 Mass. App. Ct. 271, 277, 800 N.E.2d 1077 (2004) (emphasis added). *See Tech Plus, Inc. v. Ansel*, 59 Mass. App. Ct. 12, 18-19, 793 N.E.2d 1256 (2003) (holding that without "actual pecuniary loss," there can be "no recovery on a claim for tortious interference with advantageous relationships"). Thus, this cause of action necessarily requires proof of damages as an element of the claim. As a result, there is no serious question that damages are potentially being sought in Count One.

The Second Count alleges a claim for misappropriation of name based on Massachusetts General Law Chapter 214, § 3A. This statute provides that a claimant "may recover *damages* for any injuries sustained by reason of such [unauthorized] use." Mass. Gen. Laws ch. 214, § 3A (emphasis added). Thus, the very statute invoked by the Patriots as the basis for this count provides for the recovery of damages.

The Third Count alleges a claim under the Unfair Trade Practices Act, Massachusetts General Law Chapter 93A, § 2. This statute provides that a cause of action for Unfair Trade Practices may be brought "for money damages only." Mass. Gen. Laws ch. 93A, § 2. As such, recovery *"shall be in the amount of actual damages*; or up to three, but not less than two, times such amount." *Id.* (emphasis added). Once again, the statute on which the claim is based plainly provides for the recovery of damages.

**Safe**online **Safe**Enterprise 
Carpenter Moore



Underwritten by ACE Global Markets



ace global markets

**Subsidiary** shall also mean any corporation which becomes a **subsidiary** during the **policy period** provided that such corporation does not represent more than a fifteen percent (15%) increase in **your** total assets, employee count or gross revenue as of the date of the acquisition. Where such corporation represents an increase in **your** total assets, employee count or gross revenue of more than 15 percent (15%), such corporation shall be deemed a **subsidiary** under the **Policy**, but only upon the condition that within 30 days of it becoming a **subsidiary**, **you** shall have provided **us** with full particulars of the new **subsidiary** and agreed to any additional premium and/or amendment of the provisions of this **Policy** required by **us** relating to such new **subsidiary**, subject to the review and acceptance by **us** of full and complete underwriting information. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon **you** paying when due any additional premium required by **us** relating to such new **subsidiary**. A corporation becomes a **subsidiary** when **you** own more than 50% of the issued and outstanding voting stock either directly or indirectly through one or more of its **subsidiaries**, and ceases to be a **subsidiary** at such time when **you** cease to own more than 50% of the issued and outstanding voting stock.

16. **Theft of electronic data** means the unauthorized taking or misuse of information that exists in electronic form, or which is in the course of transmission to or from a mobile or wireless device which is intended to interact with a **computer system**, including account information, confidential information, proprietary information and personal information while stored in a **computer system** maintained to the minimum standards in respect of security and back up procedures as specified in **your** Application.

17. **Trade secret** means information, including a formula, pattern, compilation, program, device, method, technique or process, that:
   (a)  derives independent economic value, actual or potential, from not being generally known to or readily ascertainable by other persons who would obtain value from its disclosure for use, so long as reasonable efforts have been made to maintain its secrecy; and
   (b)  that a business uses, which gives it an opportunity to obtain an advantage over competitors who do not know it or use it.

18. **"We", "us"** or **"our"** means the Underwriters providing this insurance.

19. **Wrongful act(s)** means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission in the rendering of **professional services** to others or arising from **your** legal liability in respect of **your** own professional activities relating to information technology, **computer systems**, communications utilizing the Internet and media services utilizing the Internet, including but not limited to;
   (a)  disparagement or harm to the reputation or character of any person or organization, defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress, mental anguish, wrongful entry or eviction, trespass, eavesdropping, false arrest, malicious prosecution, outrage or outrageous conduct;

V01.05
www.safeonline.com
info@safeonline.com                    Page 8 of 26





Swinglehurst

 **Safe**online **Safe**Enterprise 

Carpenter Moore

Underwritten by ACE Global Markets



ace global markets

(b) invasion, infringement or interference with the right to privacy or of publicity, including false light, public disclosure of private facts, intrusion or commercial appropriation of name or likeness;

(c) plagiarism, piracy or misappropriation of ideas in connection with the **Internet**;

(d) infringement of copyright, domain name, trade dress, title or slogan, or the dilution or infringement of trademark, service mark, service name or trade name;

(e) liability arising out of **your** negligent failure to prevent a party from unauthorized access to, use of or tampering with **computer systems** (including **your** employees who are not **directors** or **officers**) including;

    (i) **hacker attacks,**

    (ii) **computer virus** attacks, and

    (iii) **theft of electronic data;**

(f) liability arising out of **your** negligence in respect of any **Internet** content for which **you** are responsible;

(g) inability of an authorized third party to gain access to **your** services including **denial of service,** unless caused by a mechanical or electrical failure;

(h) negligent and inadvertent transmission by **you** to a third party of any **computer virus;**

(i) breach of confidence or misuse of any information which is either confidential or subject to statutory restriction on its use;

(j) alleged violations of the Patriot Act, Health Insurance Portability and Accountability Act, and other similar privacy statutes, the Computer Fraud, Misue and Abuse Act, the Digital Millenium Copyright Act, the Federal Wiretap Statute and other federal, state or local laws establishing legal liability for operation and use of the **Internet** and **computer systems,** including intranets and extranets, and anti-cyber squatting and domain name disputes.

20. **"You"** or **"your"** or **"yours"** means;

(a) the legal entity(s) shown in Item 2 of the Schedule;

(b) any **subsidiary** of yours, but only with respect to **wrongful acts** which occur while it is a **subsidiary** and otherwise covered by this Policy;

(c) any past, present or future officer, director, trustee or employee and in the event that **you** are a partnership, limited liability partnership or limited liability company, then any general or managing partner or principal, stockholder, owner thereof, but only while acting within the scope of their duties as such;

(d) any agent or independent contractor, including distributors, licensees and sub-licensees, but only whilst acting on **your** behalf of or at **your** direction, and under **your** control; and

(e) any entity whom **you** are required by contract to add as an insured under this Policy, but only for **your wrongful acts** and with **our** consent.

V01.05
www.safeonline.com
info@safeonline.com





Swinglehurst

**Safe**online **Safe**Enterprise
Carpenter Moore

 

Underwritten by ACE Global Markets



ace global markets

### IV. Exclusions

**We** shall not be liable for any damages or **claims expenses** directly or indirectly arising out of or in any way attributable to;

(a) any **claim** made against **you** arising out of any, willful, deliberate, malicious, fraudulent, dishonest or criminal act. However, notwithstanding the foregoing, the insurance afforded by this Policy shall apply to **claims expenses** incurred in defending any such **claim** or circumstance which might lead to a **claim**, but shall not apply to any **damages** which **you** might become legally obligated to pay, however upon the determination by a court, jury, or arbitrator, we will have the right to recover those **claims expenses** incurred from those parties found to have committed criminal, dishonest, fraudulent or malicious acts.

Whenever coverage under this insurance would be excluded, suspended or lost because of this exclusion relating to criminal, dishonest, fraudulent or malicious acts, errors or omissions by **you**, with respect to any other member of **your** management who did not personally participate or personally acquiesce or remain passive after having personal knowledge thereof, **we** agree that such insurance as would otherwise be afforded under this policy shall cover and be paid with respect to those of **you** who did not personally commit or personally participate in committing or personally acquiesce in or remain passive after having personal knowledge of one or more of the acts, errors or omissions described in this exclusion;

(b) any **claim** made by one insured against another insured;

(c) **bodily injury or property damage;**

(d) **your** insolvency, however this does not alleviate **us** of **our** responsibilities under this policy;

(e) any **claim** arising out of **your** activities as a trustee, partner, officer, director or employee of any employee trust, charitable organization, corporation, company or business other than that of the Named Insured;

(f) any **claim** or circumstance arising from any **wrongful act** prior to the **retroactive date** of this Policy or where **you** knew or could reasonably have foreseen such **wrongful act** may be the basis of a **claim;**

(g) any **claim** or circumstance previously notified to a prior insurer;

(h) any liability assumed under any contract or agreement including any breach of express warranty or guarantee, except and to the extent **you** would have been liable in the absence of such contract or agreement;

(i) actual or alleged infringement of any patent or **trade secret;**

V01.05
www.safeonline.com
info@safeonline.com

Page 10 of 26

 

Swinglehurst

**_Safe_online _Safe_Enterprise**  
Carpenter Moore



Underwritten by ACE Global Markets

ace global markets

(j)    any actual or alleged violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act or RICO), as amended, or any regulation promulgated thereunder or any similar federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

(k)    any action brought by or on behalf of the Federal Trade Commission ("FTC"), Federal Communications Commission ("FCC") or any other federal, state or local government agency or ASCAP, SESAC, BMI or other licensing organizations in such entity's regulatory, quasi-regulatory or official capacity, function or duty;

(l)    (a)    employment or work place practices, including claims arising under worker compensation laws or **claims** in respect of alleged discrimination, harassment or inappropriate employment conduct of any sort;
        (b)    any acts related to the violation of any pension, healthcare, welfare, profit sharing, mutual or investment plans, funds or trusts; or any violation of any provision of the Employee Retirement Income Security Act of 1974, or any amendment to the Act or any violation of any regulation, ruling or order issued pursuant to the Act;

(m)    any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, rules and regulations of the Securities Exchange Commission, the securities laws or regulations of any state, or any common law claim relating to any transaction arising out of, involving, or relating to the purchase or sale or offer to purchase or sell securities of **your** Company or any other entity;

(n)    any actual or alleged antitrust, restraint of trade, unfair competition, false, deceptive or unfair business practices, violation of consumer protection laws or false or deceptive advertising including violations of any local, state or federal laws regarding the aforementioned conduct;

(o)    **professional services** performed for any entity which:
        (a)    **you** own, operate, manage or control either directly or indirectly in whole or in part or in which **you** have an ownership interest in excess of 15%; or in which **you** are an officer or director; or
        (b)    wholly or partly owns, operates, controls or manages **you**;

(p)    coupons, prize discounts, prizes, awards, or any other valuable consideration given in excess of the total contracted or expected amount;

(q)    the actual or alleged inaccurate, inadequate, or incomplete description of the price of goods, products or services; or as a result of **your** cost guarantees, cost representations, contract price, or estimates of probable costs or cost estimates being exceeded;

V01.05
www.safeonline.com
info@safeonline.com

Page 11 of 26



**Swinglehurst**

*Safe*online *Safe*Enterprise 
Carpenter Moore



Underwritten by ACE Global Markets

ace global markets

(r)   any policies, procedures, methods, equipment, hardware, firmware, or software for creating, maintaining
or managing any secure means for transmitting, receiving or exchanging electronic information using or
involving digital certificates, digital signatures, certification authorities, public or private keys or
scrambling technologies, or any other similar type of technology however denominated;

(s)   alleged or actual electrical or mechanical failures and/or interruption, including an electrical disturbance,
surge, spike, brownout or blackout; or outages to gas, water, telephone, cable, satellite,
telecommunications or other infrastructure comprising or supporting the **Internet** including service
provided by the Internet Service Provider who hosts **your** website, unless under **your** operational
control;

(t)   any wear or tear, latent or time-delayed damages arising from services provided prior to the **policy
period** or gradual deterioration or **your** failure (or the failure of those acting on **your** behalf) to maintain
in accordance with standard and reasonable practice any computer, **computer system** or network,
computer software, or any other equipment;

(u)   any **claim** arising out of or resulting from the manufacturing, mining, use, sale, installation, removal,
distribution of or exposure to asbestos, materials or products containing asbestos or asbestos fibers or
dust;

(v)   any **claim** arising out of;
    (a)   war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or
    not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or
    amounting to an uprising, military or usurped power; or
    (b)   any act of terrorism.

For the purpose of this Exclusion an act of terrorism means an act, including but not limited to the use of
force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or
on behalf of or in connection with any organisation(s) or government(s), committed for political, religious,
ideological or similar purposes including the intention to influence any government and/or to put the
public, or any section of the public, in fear.

**We** also exclude loss, damage, cost or expense of whatsoever nature directly or indirectly caused by,
resulting from or in connection with any action taken in controlling, preventing, suppressing or in any
way relating to (a) and/or (b) above.
If **we** allege that by reason of this Exclusion, any loss, damage, cost or expense is not covered by this
insurance the burden of proving the contrary shall be upon **you.**
In the event any portion of this Exclusion is found to be invalid or unenforceable, the remainder shall
remain in full force and effect;

V01.05
www.safeonline.com
info@safeonline.com                    Page 12 of 26

 
Swinglehurst

**Safe**online **Safe**Enterprise
Carpenter Moore

 

Underwritten by ACE Global Markets



ace global markets

(w) alleged or actual fire, smoke, explosion, lightning, wind, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, an act of God or any other physical event, however caused;

(x) any claim arising out of the existence, emission or discharge of any electromagnetic field, electromagnetic radiation or electromagnetism that actually or allegedly affects the health, safety or condition of any person or the environment, or that affects the value, marketability, condition or use of any property;

(y) directly or indirectly arising out of or resulting from the presence or actual, alleged, or threatened discharge, seepage, dispersal, migration, release, escape, generation, transportation, storage, or disposal of pollutants at any time, including any request, demand or order that you or others test for, monitor, clean up, remove, assess, or respond to the effects of pollutants. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, odors, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed; and

(z) gambling, pornography, or the sale or provision of prohibited, restricted or regulated items including but not limited to alcoholic beverage, firearms, tobacco, or drugs.

**V. General Conditions**

**A. Limit of Liability**

**Our** maximum aggregate liability for all damages including **claims** expenses on account of all **claims** and circumstances covered by this Policy, shall be the Limit of Liability set forth in Item 5 of the Schedule.

In the event of the exhaustion of the Limit of Liability, we shall have no further liability whatsoever.

The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, **our** Limit of Liability for the **policy period**.

**B. Deductible**

The Deductible stated in Item 6. of the Schedule shall be satisfied by payments by **you** and apply to both **damages** and **claims expenses** or any combination thereof resulting from **claims** notified during the **policy period** and any Extended Reporting Period. **We** will only be liable for amounts excess of any Deductible and not exceeding **our** Limit of Liability as stated in Item 5 of the Schedule.

V01.05
www.safeonline.com
info@safeonline.com

Page 13 of 26


Swinglehurst

**Safe**online **Safe**Enterprise  
Carpenter Moore



Underwritten by ACE Global Markets

ace global markets

**C. Extended Reporting Provisions**

1. Automatic Extended Reporting Period

   If either **you** or **us** shall cancel or non-renew this policy, **you** shall have the right following the effective date of such cancellation or non-renewal, to a period of 60 days in which to give written notice to us of **claims** first made against **you** for any **wrongful act** prior to the end of the **policy period** and otherwise covered by this Policy.

2. Additional Extended Reporting Period

A. In the event of cancellation or non-renewal of this insurance by **you** or **us**, **you** shall have the right, upon payment of an additional premium in full of the total policy premium, to purchase a 12 month Extended Reporting Period at either, 100% of the total policy premium if **we** cancel or non-renew, or 200% if **you** cancel or non-renew, for **claims** first made against **you** and notified to us during the Extended Reporting Period, and arising out of any **wrongful acts** committed on or after the **retroactive date** and before the end of the **policy period**, subject to the conditions set forth herein. In order for **you** to invoke the Extended Reporting Period option, **you** must pay us within 30 days of the non-renewal or cancellation.

B. The Limit of Liability for the Extended Reporting Period shall be part of, and not in addition to, **our** Limit of Liability for the **policy period**.

C. **Your** right to the Extended Reporting Period shall not be available where cancellation or non-renewal by **us** is due to non-payment of premium or **your** failure to pay such amounts in excess of the applicable Limit of Liability or within the amount of the applicable Deductible.

D. All notices and premiums payments with respect to the Extended Reporting option shall be directed to **us** through the entity named in Item 10 of the Schedule.

E. At the commencement of the Extended Reporting Period the entire premium shall be deemed earned; in the event that **you** terminate the Extended Reporting Period for any reason prior to its natural expiration, **we** will not be liable to return any premium paid for the Extended Reporting Period.

**D. Notice/ Claims Reporting Provisions**

1. If any **claim** is made against **you**, **you** shall as soon as practicable forward to **us** through persons named in Item 9 of the Schedule every letter of claim, demand, notice, summons or other process received by **you** or **your** representative.

V01.05
www.safeonline.com
info@safeonline.com

Page 14 of 26

 

Swinglehurst

**Safe**online **Safe**Enterprise

Carpenter Moore

 

Underwritten by ACE Global Markets



**ace global markets**

2.  If during the **policy period you** first become aware of any circumstance that could reasonably be the
    basis for a **claim you** may provide written notice to **us** through persons named in Item 9 of the Schedule
    during the **policy period** of;
    i.    the specific details of any **wrongful act** that could reasonably be the basis for a **claim**;
    ii.   the injury or damage which may result or has resulted from the circumstance; and
    iii.  the facts by which **you** first became aware of this.

    Any subsequent **claim** arising out of such circumstance made against **you** which is the subject of the
    written notice will be deemed to have been made at the time written notice complying with the above
    requirements was first given to **us**.

3.  A **claim** shall be considered to be notified to **us** when written notice is first given to **us** through persons
    named in Item 9 of the Schedule of the **claim** or of any **wrongful act**, which could reasonably be
    expected to give rise to a **claim** if provided in compliance with 2. above.

4.  If **you** shall make any **claim** knowing the same to be false or fraudulent, as regards amount or
    otherwise, this Policy shall become void and all **claims** hereunder shall be forfeited.

**E.   Your Duties**

1.  In the event of a **claim** or potential **claim** as covered by this Policy, **you** shall at all times co-operate with
    **us**. At **your** own cost, **you** shall make available **your** employees so as to reduce or avoid circumstances
    which might lead to a **claim** as covered under this Policy.

2.  **You** shall at **your** own expense take all reasonable precautions to prevent and thereafter mitigate
    **claims** at all times and adhere to and maintain all security systems as outlined in the Application Form.

3.  **You** shall not admit liability, make any payment, assume any obligations, incur any expense, enter into
    any settlement, stipulate to any judgement or award or otherwise dispose of any **claim** without **our**
    consent.

    Expenses incurred by **you** in assisting and cooperating with **us** as described above, do not constitute **claims**
    **expenses** under this Policy.

**F.   Other insurance**

    The cover provided by this Policy is excess over and above any other valid insurance, (including any
    deductible portion) or agreement of indemnity available to **you**.



V01.05
www.safeonline.com
info@safeonline.com

Page 15 of 26

Swinglehurst

**Safe**online **Safe**Enterprise  

Carpenter Moore



Underwritten by ACE Global Markets

ace global markets

**G.  Legal Action Against Us**

No person or organization has a right under this Policy to (1) join us as a party or otherwise bring us into a suit asking for damages from you, or (2) sue us under this Policy in the absence of compliance with all of the terms and conditions of this Policy by you.

A person or organization may sue us to recover on an agreed settlement or on a final judgement against you obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, by you, and by the claimant or the claimant's legal representative.

**H.    Choice of Law Provision**

For all purposes, this Policy shall be interpreted according to the law in Illinois which conflict of law principles shall not be used to adopt the law of other states in the United States.

**I.    Subrogation**

In the event of us being required to make any form of payment under this Policy, we shall be subrogated to all your rights of recovery against any person or organization and you must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. You must not do anything to prejudice such rights. Subrogation recovery shall reimburse us for all claims expenses as well as costs of pursuing the subrogation and additional amounts, if any, shall be emitted to you to the extent of your damages paid.

**J.    Changes**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Insurance or stop us from asserting any right under the terms of this Insurance; nor shall the terms of this Insurance be waived or changed, except by endorsement issued to form a part of this Insurance, signed by us.

**K.  Mergers and Acquisitions**

In the event that you consolidate, merge or are acquired by another entity, then all coverage under this Policy shall terminate at the date of the consolidation, merger or acquisition unless we have issued an endorsement extending coverage under this Policy, and you have agreed to any additional premium and terms of coverage required by us.

**L.   Assignment**

This Policy may not be assigned to any party without our written consent.

V01.05
www.safeonline.com
info@safeonline.com

Page 16 of 26



# *Safe*online○ *Safe*Enterprise
## Carpenter Moore




Underwritten by ACE Global Markets



ace global markets

**M.  Cancellation**

1.  This Policy may be cancelled by **you** by surrender thereof to us or by mailing to **us** through the entity
    named in Item 10 of the Schedule written notice stating when thereafter the cancellation shall be
    effective.  **We** may cancel this insurance by mailing to **you** via the broker written notice stating when not
    less than 60 days thereafter such cancellation shall be effective.  However, if **we** cancel this insurance
    because **you** have failed to pay a premium when due this insurance may be cancelled by **us** by mailing
    a written notice of cancellation to **you** at the address shown in the Schedule stating when not less than
    10 days thereafter such cancellation shall be effective.

2.  If **you** cancel this insurance, thirty percent (30%) of the premium shall be deemed earned upon
    inception of this Policy, and the remaining earned premium shall be computed in accordance with the
    Lloyd's short rate table and procedure; provided that the premium shall be deemed fully earned if any
    claim under this Policy is notified to us on or before the date of cancellation.  If **we** cancel this
    insurance, earned premium shall be computed pro rata.  Premium adjustment may be made either at
    the time cancellation is effected or as soon as practicable after cancellation becomes effective, but
    payment or tender of unearned premium is not a condition of cancellation.

**N.  Dispute Resolution**

The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Policy promptly
by negotiation. If the dispute has not been resolved by negotiation within forty-five (45) days of the disputing
party's notice, either party may demand that the dispute be submitted for non-binding resolution under the
then current CPR Model Mini-Trial Procedures in effect on the date of this agreement.  Unless otherwise
agreed, the parties will select a mini-trial neutral advisor from the CPR Panels of Neutrals and shall notify
CPR and request CPR to initiate the selection process. All applicable statutes of limitations and defenses
based upon the passage of time shall be tolled while the procedures specified herein are pending.  The
parties will take such action, if any, required to effectuate such tolling.

The parties agree that no suit will be filed by either party against the other party seeking resolution of any
dispute arising out of or relating to this Policy until the parties have (1) attempted to negotiate a resolution,
(2) completed the non-binding CPR Mini-Trial proceeding through decision, and (3) thirty days have elapsed
since the conclusion of the non-binding CPR Mini-Trial proceeding.



V01.05
www.safeonline.com
info@safeonline.com

Page 17 of 26



Swinglehurst

**Safe**online  **Safe**Enterprise
Carpenter Moore




Underwritten by ACE Global Markets



ace global markets

**O.   Service of Suit**

It is agreed that in the event of the failure of us to pay any amount claimed to be due, we at your request, will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of **our** rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United Stated District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  It is further agreed that service of process in such suit may be made upon the firm noted in Item 11 of the Schedule Sedgwick, Detert, Moran & Arnold, 3 Park Plaza, 17th Floor, Irvine, California 92614-8540, U.S.A., and that in any suit instituted against any one of **us** upon this contract, we will abide by the final and unappealable decision of such Court or of any Appellate Court including in the event of an appeal.

The above named are authorized and directed to accept service of process on **our** behalf in any such suit and/or upon **your** request to give a written undertaking to **you** that they will enter a general appearance upon **our** behalf in the event that such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, **we** designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or their successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on **your** behalf or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.



V01.05
www.safeonline.com
info@safeonline.com

Page 18 of 26.

Swinglehurst

 

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

> Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

<u>This Policy*</u> does not apply:

I.    Under any Liability Coverage, to injury, sickness, disease, death or destruction:

     (a) with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

     (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.    Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

     (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

     (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

     (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

V.    As used in this endorsement:

> "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included

VFM




within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a)  any nuclear reactor,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
NMA1256





### RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionising radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

13/2/64
NMA1477






**NEW SHORT RATE CANCELLATION TABLE ENDORSEMENT (U.S.A.) (amended)**

In consideration of the premium for which this Insurance is written and in accordance with General Condition M.2. of this Policy, it is agreed that in the event of cancellation thereof by you the remaining Earned Premium, after the deduction of 30% of the premium at inception, shall be computed as follows:-

### SHORT RATE CANCELLATION TABLE

A.    For insurances written for one year:-

| Days Insurance In Force | | Per cent. of One Year Premium | Days Insurance In Force | | Per cent. of One Year Premium |
|---|---|---|---|---|---|
| 1 - 73 | ................. | 30 | 206 - 209 | | 66 |
| 74 - 76 | ................. | 31 | 210 – 214 | ................. | 67 |
| 77 - 80 | ................. | 32 | 215 – 218 | ................. | 68 |
| 81 - 83 | ................. | 33 | 219 – 223 | ................. | 69 |
| 84 - 87 | ................. | 34 | 224 – 228 | ................. | 70 |
| 88 - 91 | (3 months) ........ | 35 | 229 – 232 | ................. | 71 |
| 92 - 94 | ................. | 36 | 233 – 237 | ................. | 72 |
| 95 - 98 | ................. | 37 | 238 – 241 | ................. | 73 |
| 99 - 102 | ................. | 38 | 242 – 246 | (8 months) ........ | 74 |
| 103 – 105 | ................. | 39 | 247 – 250 | ................. | 75 |
| 106 – 109 | ................. | 40 | 251 – 255 | ................. | 76 |
| 110 – 113 | ................. | 41 | 256 – 260 | ................. | 77 |
| 114 – 116 | ................. | 42 | 261 – 264 | ................. | 78 |
| 117 – 120 | ................. | 43 | 265 – 269 | ................. | 79 |
| 121 – 124 | (4 months) ........ | 44 | 270 – 273 | (9 months) ........ | 80 |
| 125 – 127. | ................. | 45 | 274 – 278 | ................. | 81 |
| 128 – 131 | ................. | 46 | 279 – 282 | ................. | 82 |
| 132 – 135 | ................. | 47 | 283 – 287 | ................. | 83 |
| 136 – 138 | ................. | 48 | 288 – 291 | ................. | 84 |
| 139 – 142 | ................. | 49 | 292 – 296 | ................. | 85 |
| 143 – 146 | ................. | 50 | 297 – 301 | ................. | 86 |
| 147 – 149 | ................. | 51 | 302 – 305 | (10 months) ........ | 87 |
| 150 - 153 | (5 months) ........ | 52 | 306 – 310 | ................. | 88 |
| 154 - 156 | ................. | 53 | 311 – 314 | ................. | 89 |
| 157 - 160 | ................. | 54 | 315 – 319 | ................. | 90 |
| 161 - 164 | ................. | 55 | 320 – 323 | ................. | 91 |
| 165 - 167 | ................. | 56 | 324 – 328 | ................. | 92 |
| 168 - 171 | ................. | 57 | 329 – 332 | ................. | 93 |
| 172 - 175 | ................. | 58 | 333 – 337 | (11 months) ........ | 94 |
| 176 - 178 | ................. | 59 | 338 – 342 | ................. | 95 |
| 179 - 182 | (6 months) ........ | 60 | 343 – 346 | ................. | 96 |
| 183 - 187 | ................. | 61 | 347 – 351 | ................. | 97 |
| 188 - 191 | ................. | 62 | 352 – 355 | ................. | 98 |
| 192 - 196 | ................. | 63 | 356 – 360 | ................. | 99 |
| 197 - 200 | ................. | 64 | 361 – 365 | (12 months) ........ | 100 |
| 201 - 205 | ................. | 65 | | | |

B.    For Insurances written for more or less than one year:-

   1.    If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

   2.    If insurance has been in force for more than 12 months:

 

(a)  Determine full annual premium as for an insurance written for a term of one year.

(b)  Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata Earned Premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

(c)  Add premium produced in accordance with items (a) and (b) to obtain Earned Premium during full period insurance has been in force.

09/02/58
NMA45 (amended)




**PREMIUM PAYMENT WARRANTY**

IT IS WARRANTED that all Premiums due to us under this Policy are paid within 45 days from Inception.

Non-receipt by us of such premiums by Midnight on the Premium Due date shall render this Insurance Policy void with effect from Inception.

LSW585(11/93) (amended)



 

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.  war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If we allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon you.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918 (amended)