EXHIBIT "C"



COZEN
O'CONNOR
ATTORNEYS

A PROFESSIONAL CORPORATION

SUITE 1500    222 SOUTH RIVERSIDE PLAZA    CHICAGO, IL 60606-6000
312.382.3100    877.992.6036    312.382.8910 FAX    www.cozen.com

January 12, 2007

**Josh M. Kantrow**
Direct Phone 312.382.3149
Direct Fax    312.382.8910
jkantrow@cozen.com

**VIA EMAIL**
**INSURER – INSURED**
**COMMUNICATION**
**PROTECTED AND CONFIDENTIAL**

Ms. Brett Robertson
Senior Vice President and General Counsel
StubHub
55 Second Street
Suite 300
San Francisco, CA 94105

Re:   Insured:            StubHub
      Claimants:          NPS LLC and New England Patriots, L.P.
      Policy No.:         SF604690Z
      Policy Period:      1st May 2006 to 1st May 2007
      Our Reference:      195933

Dear Ms. Robertson:

        This will acknowledge our receipt of the November 28, 2006, notification from Woodruff-Sawyer & Co. Insurance Services informing us of the above matter. As you know, Cozen O'Connor has been retained on behalf of certain Underwriters at Interest ("Underwriters") subscribing to Safeonline™ SafeEnterprise Policy Number SF60690Z ("the Policy"). This matter involves a lawsuit filed on November 21, 2006, in a Massachusetts state court by the plaintiffs, NPS LLC and New England Patriots, L.P. ("NPS") against StubHub. NPS alleges that StubHub's activities in providing a marketplace for purchasing and selling tickets to New England Patriots football game tickets are illegal and unauthorized.

        We have been in touch with you and defense counsel, David Kramer of Wilson Sonsini, regarding the status of this matter, which is in litigation. At this time then, we wish to make note of certain relevant policy provisions and acknowledge our role in the litigation management of this matter.

, Ms. Brett Robertson
January 12, 2007
Page 2

To summarize, the complaint alleges that:

- "StubHub sabotages [NPS's] efforts to provide a safe, fan-friendly, affordable environment by failing to disclose material information" in violation of Massachusetts law;

- StubHub encourages "others to violate Massachusetts law"; and

- "StubHub's illegal ticket resale activity causes harm to consumers and damages the Patriots' goodwill with their fans."

NPS asserts the following causes of action: (1) intentional interference with advantageous relations (including a claim that StubHub trafficked in fraudulent sales); (2) misappropriation of name; (3) unfair trade practices act violations. NPS also asserts several causes of action against Steven and Carol McGrath and 50 unnamed Patriots season ticket holders (hereafter "the season ticket holders") engaged in the resale of Patriots tickets through StubHub.

NPS seeks preliminary injunctive relief against the season ticket holders and a permanent injunction against all defendants from "the illegal and unauthorized resale of Patriots tickets." NPS also seeks the establishment of "a constructive trust containing three times the revenues defendants improperly received and any amount by which defendants were unjustly enriched."

Our investigation of this situation is continuing. Accordingly, we are proceeding pursuant to a general reservation of all of Underwriters' rights, remedies, and defenses. That said, an initial review of the Policy and the information we have concerning this claim indicates that many aspects of this claim may not be covered under the Policy, as discussed more fully below. In this context, this communication is not to be construed as a comprehensive list of defenses, and Underwriters reserve their rights to assert additional rights, remedies, and defenses as they may arise in the future without waiver. For your reference, we outline the significant issues currently identified in relation to this matter.

## 1.    *The Policy*

As you are aware, Underwriters issued policy number SF604690Z, to StubHub, for the period effective 1 May 2006 – 1 May 2007, with a retroactive date of 1st March 2001 or 12th January 2004, depending on the limit of liability. (1st March 2001 is shown as the retroactive date, with limits of \$2mil but at 12th January 2004 for \$1mil excess of \$2mil.) The Limit of Liability for this Policy is \$3,000,000 in the aggregate including Claims Expenses. The deductible is \$75,000 for each claim including Claims Expenses.

This is a "claims made" policy, which provides in relevant part:

I.    Insuring Agreement

**We** shall pay on **your** behalf all **damages** and **claims expenses** within the Limit of Liability in excess of **your** Deductible which **you** become legally obliged to

Ms. Brett Robertson
January 12, 2007
Page 3

---

pay as a result of any **claim** arising from any **wrongful act** first made against **you** and notified by **you** to **us** in writing during the **policy period** or any Extended Reporting Period.

\* \* \* \*

III.    Definitions

\* \* \* \*

6.    **Damages** means a compensatory monetary judgment, award or settlement, other than;

    (a)    **your** future royalties or future profits, restitution, disgorgement of profits, or the costs of complying with orders granting injunctive relief;

\* \* \*

    (c)    punitive, exemplary, treble or other damages that are assessed in part to punish the defendant or to deter others;

\* \* \* \*

11.    **Professional services** means **your** professional activities which are performed for and on behalf of **your** clients or customers in the course of **your** business arising from activities, advice or products relating to information technology, **computer systems**, communications and media services utilizing the **Internet**...

18.    **Wrongful act(s)** means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission in the rendering of **professional services** to others or arising from **your** legal liability in respect of **your** own professional activities relating to information technology, **computer systems**, communications utilizing the **Internet** and media services utilizing the **Internet**, including but not limited to;

    (a)    disparagement or harm to the reputation or character of any person or organization, defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress, mental anguish, wrongful entry or eviction, trespass, eavesdropping, false arrest, malicious prosecution, outrage or outrageous conduct;

\* \* \*

    (f)    liability arising out of **your** negligence in respect of any **Internet** content for which you are responsible.

\* \* \* \*

Ms. Brett Robertson
January 12, 2007
Page 4

At this stage, it appears that certain of the allegations by NPS fall within the above terms/definitions. Moreover, this claim was made within the policy period of May 1, 2006 – 2007 as the lawsuit was filed on November 21, 2006. Furthermore, the claim was timely reported by your U.S. broker, Woodruff-Sawyer, to Underwriters (via us) on November 28, 2006, within the policy period.

However, the Policy contains certain definitions, exclusions, and other terms and conditions that may act to preclude coverage under the Policy. Specifically, you are advised that the Policy excludes coverage for any willful, malicious or fraudulent conduct, and for any restraint of trade, unfair competition, deceptive or unfair business practices, or false or deceptive advertising. The wording states in this regard:

IV.    Exclusions

**We** shall not be liable for any **damages** or **claims expenses** directly or indirectly arising out of or in any way attributable to;

(a) any **claim** made against **you** arising out of any, willful, deliberate, malicious, fraudulent, dishonest or criminal act. However, notwithstanding the foregoing, the insurance afforded by this Policy shall apply to **claims expenses** incurred in defending any such **claim** or circumstance which might lead to a **claim,** but shall not apply to any **damages** which **you** might become legally obligated to pay, however upon the determination by a court, jury, or arbitrator, **we** will have the right to recover those **claims expenses** incurred from those parties found to have committed criminal, dishonest, fraudulent or malicious acts;

\* \* \* \*

(n) any actual or alleged antitrust, restraint of trade, unfair competition, false, deceptive or unfair business practices, violation of consumer protection laws or false or deceptive advertising including violations of any local, state or federal laws regarding the aforementioned conduct;

\* \* \* \*

To the extent any of the alleged conduct was willful, malicious, and/or fraudulent, said conduct is not covered under the Policy. Moreover, allegations against you for liability arising out of any restraint of trade, unfair competition, deceptive or unfair business practices, or false or deceptive advertising are not covered under the Policy.

Additionally, as shown above, the Policy definition of "damages" impacts coverage in this matter. To the extent any restitution, disgorgement of profits, the costs of complying with injunctive relief, punitive, exemplary or treble damages, are assessed against you by way of settlement, judgment, or otherwise, they are not covered by the Policy.

Ms. Brett Robertson
January 12, 2007
Page 5

_____

**2.** *Defense Counsel and Settlement*

As we are proceeding under a general reservation of rights at this time, and because of the retention of defense counsel, we direct your attention to Section II, Defense and Settlement of Claims, which provides:

**II.    Defense and Settlement of Claims**

(a) It is **our** duty to defend a **claim** against **you** even if such **claim** is groundless or fraudulent however **our** right and duty to defend **you** under this Policy ends when the applicable Limit of Liability has been exhausted by payments of **damages** or **claims expenses**.

(b) **We** have the right and duty to defend, subject to the Limit of Liability, Exclusions, and other terms and conditions in this Policy, any **claim** against **you** seeking **damages** including injunctive or other non-monetary relief first made against **you** and notified to **us** during the **policy period** or any Extended Reporting Period, for any **wrongful act** first committed by **you** on or after any **retroactive date** and before the end of the **policy period**.

(c) **You** may not make any payment (except at **your** own cost), assume any obligation, or incur any expense in relation to a **claim** without **our** written consent, provided that such consent may not be unreasonably withheld. Only reasonable and necessary costs will be paid.

(d) **We** have the right to select and appoint defense counsel to defend any **claim** notified under this Policy. If **you** have appointed defense counsel, at **our** request **you** shall instruct them to turn over all their relevant files, materials and work product and co-operate with counsel who **we** select and appoint as defense counsel.

(e) **We** have the right to investigate and settle any **claim** in the manner and to the extent that **we** believe is proper unless the total cost of **damages** and **claims expenses** is less than the amount remaining within **your** Self Insured Retention. If **you** refuse to consent to any settlement or compromise recommended by **us** which is also acceptable to the claimant and then elect to contest the **claim, our** liability for any **damages** and **claims expenses** shall not exceed the amount for which the **claim** could have been settled, less the remaining Deductible, plus the **claims expenses** incurred up to the time of such refusal, or the applicable Limit of Liability, whichever is less, and **we** shall have the right to withdraw from further defense by tendering control of said defense to **you**.

Further, we direct your attention to Section V., General Conditions, which provides under Subsection E. Your Duties, as follows:

. Ms. Brett Robertson
January 12, 2007
Page 6

---

### E. Your Duties

1. In the event of a **claim** or potential **claim** as covered by this Policy, **you** shall at all times co-operate with **us**. At **your** own cost, **you** shall make available **your** employees so as to reduce or avoid circumstances which might lead to a **claim** as covered under this Policy.

2. **You** shall at **your** own expense take all reasonable precautions to prevent and thereafter mitigate **claims** at all times and adhere to and maintain all security systems as outlined in the Application Form.

3. **You** shall not admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgment or award or otherwise dispose of any **claim** without **our** consent.

Expenses incurred by **you** in assisting and cooperating with **us** as described above, do not constitute **claims expenses** under this Policy.

* * * *

We understand that you have retained David Kramer of Wilson Sonsini as lead defense counsel and Jack Fabiano of WilmerHale as local counsel. Further to these terms, and pending receipt of the information about rates for Mr. Kramer's antitrust partner and local counsel, and a litigation budget, which we requested from defense counsel on December 4, 2006, we have no specific objection to the retention of these law firms. We provided Mr. Kramer and you with the Underwriters' litigation management guidelines on December 12, and asked that Mr. Kramer forward them to Mr. Fabiano.

On a related topic, you are advised that Underwriters will not reimburse any damages or claims expenses that are incurred in connection with unrelated, corporate matters. We recommend that Insureds retain separate counsel with respect to any coverage issues that may arise. In this context, we advise Insureds that there is no coverage under the Policy for any fees or costs associated with defense counsel's review, analysis, or otherwise handling of coverage issues associated with this claim.

Further, as StubHub has filed a counterclaim, this will confirm our prior conversations in which we advised that Underwriters are not responsible for paying claims expenses related to offensive actions. As we discussed with you and defense counsel, we ask that defense counsel segregate their billings for activities that relate to any counterclaim. Also, as discussed, given that two firms have been retained, we reiterate our request that there be no duplication of effort between the two firms, and that they handle this matter in an economical fashion.

Further, as we discussed on January 12, Insurers reserve the right to seek reimbursement for defense costs as to any claims that are not covered.

In conclusion, Underwriters also reserve all other rights and defenses available at law, in equity, or under the Policy, whether expressly stated herein or otherwise. It is to be understood

Ms. Brett Robertson
January 12, 2007
Page 7

that any and all investigation, settlement negotiations, or other activity undertaken thus far, or to be undertaken by or on behalf of Underwriters in connection with this matter shall be done subject to this reservation, and that such activity is not to be construed as any admission by Underwriters.

As a formality, California law requires that we advise you that if you have objections to the Underwriters' handling of a claim or disagreements with the coverage afforded by the policy, you may contact the California Department of Insurance at the following location:

The California Department of Insurance
Claim Services Bureau, 11th Floor
300 South Spring Street
Los Angeles, CA 90013
(800) 927-4357 or (213) 897-8921

We look forward to working with you to address any coverage issues that may be identified to contain the potential loss, and to resolve any disputes efficiently and effectively. Please feel free to contact us if you have any questions. My direct number is (312) 382-3149 and my email address is jkantrow@cozen.com. Beth Stroup of our firm will assist our clients in this matter. Beth can be reached at (312) 382-3151 or via email at bstroup@cozen.com.

Very truly yours,

COZEN O'CONNOR

By: Josh M. Kantrow

JMK
cc:    Mr. Ray Miller, Woodruff-Sawyer (via email)
       Mr. Tim Ward, The CAS Network (via email)

CHICAGO\442959\1 195933.000

EXHIBIT "D"



**COZEN
O'CONNOR**
·ATTORNEYS·

A PROFESSIONAL CORPORATION

SUITE 1500    222 SOUTH RIVERSIDE PLAZA    CHICAGO, IL 60606-6000
. 312.382.3100   877.992.6036   312.382.8910 FAX   www.cozen.com

May 3, 2007

**Josh M. Kantrow**
Direct Phone 312.382.3149
Direct Fax    312.382.8910
jkantrow@cozen.com

**VIA EMAIL AND U.S. MAIL
INSURER – INSURED
COMMUNICATION
PROTECTED AND CONFIDENTIAL**

Ms. Allyson Willoughby
General Counsel
eBay
2145 Hamilton Ave.
San Jose, CA 95125
allysonw@ebay.com

| Re: | Insured: | StubHub |
|---|---|---|
| | Claimants: | NPS LLC and New England Patriots, L.P. |
| | Policy No.: | SF60690Z |
| | Policy Period: | 1st May 2006 to 1st May 2007 |
| | Our Reference: | 195933 |

Dear Ms. Willoughby:

As you know, Cozen O'Connor has been retained on behalf of certain Underwriters at Interest ("Underwriters") subscribing to Safeonline™ SafeEnterprise Policy Number SF60690Z ("the Policy"). This will supplement Underwriters' January 12, 2007 coverage correspondence.

We noted in our January 12 correspondence that Underwriters' "investigation of this situation is continuing"; that Underwriters "are proceeding pursuant to a general reservation of all of [their] rights, remedies, and defenses; and that "an initial review of the Policy and the information we have concerning this claim indicates that many aspects of this claim may not be covered under the Policy."

By this correspondence, Underwriters wish to advise StubHub that the captioned Policy does not provide coverage for NPS's lawsuit because the Complaint does not allege a "claim" or "damages" as these terms are defined in the policy. The Policy's Insuring Agreement provides, in pertinent part, that Underwriters "shall pay on **your** behalf all **damages** and **claims expenses**

Ms. Allyson Willoughby
May 3, 2007
Page 2

---

... which **you** become legally obliged to pay as a result of any **claim** arising from any **wrongful act**" within the policy period.[1]

  "**Claim**" is defined as a civil proceeding, arbitration, mediation, or written demand for "**damages**."[2]

  "**Damages**"[3] means a compensatory monetary judgment, award or settlement, other than;

   (a) **your** future royalties or future profits, restitution, disgorgement of profits, or the costs of complying with orders granting injunctive relief;

   (b) return or offset of fees, charges, or commissions for goods or services already provided or contracted to be provided;

   (c) punitive or exemplary (unless insurable by law), treble or other damages that are assessed in part to punish the defendant or to deter others;

         * * *

  NPS seeks the establishment of "a constructive trust containing three times the revenues defendants improperly received and any amount by which defendants were unjustly enriched." Thus, the Complaint seeks the "restitution, disgorgement of profits and/or the return .... of fees, charges, or commissions," which fall outside the Policy's definition of "**damages**." Moreover, the Complaint's request for three times StubHub's revenues seeks "punitive or exemplary (unless insurable by law), treble or other damages that are assessed in part to punish the defendant or to deter others," which also falls outside the definition of "**damages**."

  The only other relief requested by NPS is a permanent injunction to bar StubHub from "the illegal and unauthorized resale of Patriots tickets." The request for a permanent injunction seeks equitable relief, not a "compensatory monetary judgment, award or settlement," i.e., "**damages**." As "**damages**" that would be covered by the Policy are not sought, the request for injunctive relief is not a "**claim**" as defined by the Policy, and is thus not covered by the Policy.

  In light of these provisions, the Policy does not provide coverage to StubHub for NPS's claims. Furthermore, Underwriters do not have a duty to defend StubHub. Section II of the Policy provides that Underwriters have a "duty to defend a **claim**" against StubHub. However, as noted above, "**claim**" is defined as a civil proceeding, arbitration, mediation, or written demand for "**damages**." As NPS's suit does not allege any covered damages, Underwriters have no duty to defend StubHub.

  However, as a show of utmost good faith, and without waiver of any defenses whether in law or equity, or any Policy provisions, including but not limited to those set forth in this correspondence and our January 12, 2007 correspondence, Underwriters will continue to defend StubHub in accordance with the Litigation Management Guidelines and our discussions with

---

[1] See Section I of the Policy
[2] "Claim" is defined in Section III (2) of the Policy.
[3] "Damages" is defined in Section III (6) of the Policy.

Ms. Allyson Willoughby
May 3, 2007
Page 3

defense counsel until the coverage issues are resolved.[4]  However, Underwriters reserve their right to seek reimbursement of defense fees paid to StubHub following a coverage determination.

By this correspondence, unless StubHub were to withdraw this claim, Underwriters' invoke the Policy's dispute resolution provision, set forth in Section N of the Policy.  Please contact us at your earliest convenience so that we can discuss proceeding under that provision.

In conclusion, Underwriters also reserve all other rights and defenses available at law, in equity, or under the Policy, whether expressly stated herein, in our January 12, 2007 correspondence, or otherwise.  It is to be understood that any and all investigation, settlement negotiations, or other activity undertaken thus far, or to be undertaken by or on behalf of Underwriters in connection with this matter shall be done subject to this reservation, and that such activity is not to be construed as any admission by Underwriters.

As a formality, while the "Policy shall be interpreted according to the law of Illinois[5]," if you have objections to Underwriters' handling of the claim or disagreements with the coverage afforded by the Policy, you may contact the California Department of Insurance at the following location:

The California Department of Insurance
Claim Services Bureau, 11th Floor
300 South Spring Street
Los Angeles, CA  90013
(800) 927-4357 or (213) 897-8921

Very truly yours,

COZEN O'CONNOR

Josh M. Kantrow

JMK

CHICAGO\442959\2 195933.000

---

[4] Of course, Underwriters are not responsible for paying fees and costs associated with StubHub's prosecution of the counterclaim.
[5] See Section (V) (H) of the Policy.

# EXHIBIT "E"

**HOWREY**LLP 

Josh M. Kantrow, Esq.
June 14, 2007
Page 3

The Seventh Count seeks the establishment of a constructive trust against StubHub and other defendants. This claim appears to be nothing more than a substitute for the imposition of damages rather than a true claim for equitable relief. The Patriots are not seeking the return of money taken from them or the disgorgement of ill gotten gains. None of the money earned by StubHub came at the Patriot's expense and therefore this is not a true claim for restitution. At one time, you apparently shared this view as well. In your December 12, 2006 email to David Kramer, you asked for Mr. Kramer for "damages information" to support the constructive trust claim. The Patriots' request for a constructive trust is thus simply a disguised claim for damages based on the prior causes of action.

Even under comparable CGL policies, both California and Illinois provide that claims for equitable relief constitute claims for "damages" under CGL policies. *See AIU v. Superior Court,* 51 Cal. 3d 807, 840, 799 P.2d 1253 (1990) ("it would exalt form over substance to interpret CGL policies to cover one remedy but not the other" and "we believe that a reasonable insured would expect both remedies to fall within coverage as 'damages'"); *Outboard Marine,* 154 Ill. 2d at 117, 607 N.E.2d 1216 ("the parties intended these policies to cover liability for property damage caused by an occurrence regardless of whether that liability is equitable or legal in nature").

Moreover, each count brought against StubHub alleges that the Patriots "have suffered harm, and will continue to suffer harm, including, but not limited to, the impairment of fan goodwill." *See* Complaint at ¶¶ 68, 72, 77, 95. The only method to compensate the Patriots for past losses arising from the impairment of goodwill is through compensatory damages, which are recoverable under Massachusetts law. *See, e.g., White v. Universal Underwriters Ins. Co.,* 347 Mass. 367, 381-82, 197 N.E.2d 868 (1964) (discussing various means of calculating damages for loss of goodwill); *Donahue v. Draper,* 22 Mass. App. Ct. 30, 34-42, 491 N.E.2d 260 (1986) (affirming jury's award of monetary damages for loss of goodwill). These allegations further confirm the potential for indemnity under the Policy.

Thus, each claim independently triggers Underwriters' duty to defend. However, even if only *one* of the Patriots' theories of recovery falls within the potential coverage of the Policy, Underwriters must defend StubHub on all counts alleged in the complaint. *National Union Fire Ins. Co. v. Glenview Park Dist.,* 158 Ill. 2d 116, 124, 632 N.E.2d 1039, 1042-43 (1994); *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal. 4th 1076, 1084, 846 P.2d 792 (1993).

Even if Underwriters disagree that the counts alleged against StubHub potentially seek damages, they clearly constitute circumstances that could result in a "claim," which also triggers Underwriters' duty to defend. In addition to defining "claim" as a civil proceeding for damages, the Policy also defines a claim as "notice by a third party to you of circumstances that could reasonably be expected to result in any of the foregoing," *i.e.,* a civil proceeding for damages. Policy at III.2(d). Thus, even if the complaint could somehow be read to not state a claim for damages, it plainly identifies circumstances that could reasonably be expected to result in such a claim. This provision further confirms Underwriters' duty to defend.

Undoubtedly recognizing the potential of coverage created by the Patriots' suit, in January 2007, Underwriters agreed to honor the terms of the Policy and provide StubHub with a

# HOWREY LLP

 

Josh M. Kantrow, Esq.
June 14, 2007
Page 4

defense. During the next several months, Underwriters took an active role in planning defense strategy, directing that defense and even suggesting that settlement conferences be commenced promptly. StubHub took numerous litigation positions in reliance on Underwriters' agreement to defend.

Suddenly, on May 3, 2007, Underwriters notified StubHub that it was unilaterally withdrawing its defense of StubHub and denying coverage. Underwriters' tardy and unjustified denial of coverage, after months of providing StubHub with a defense, is in bad faith. Nothing occurred over the past several months warranting Underwriters' change of course. No new facts were developed or pleadings amended that might justify denying StubHub its defense at this juncture. Indeed, Underwriters' denial appears to be based solely on the language of the Policy and the claims alleged in the complaint, information that was obviously available to Underwriters upon tender of the action last November.

Underwriters' abrupt withdrawal of its defense constitutes a breach of the implied covenant of good faith and fair dealing. *See Campbell v. Superior Court (Farmers Ins. Co.)*, 44 Cal. App. 4th 1308, 1319 (1996) ("if an insurer *unreasonably* fails to defend, it has breached the implied covenant of good faith and fair dealing") (emphasis in original); *Willis Corroon Corp. v. Home Ins. Co.*, 203 F.3d 449, 452-53 (7th Cir. 2000) (an insurer acts in bad faith if it denies coverage after undertaking the defense of an action and prejudices the insured).

In addition, we note that Underwriters have attempted to reserve a purported right to seek reimbursement of defense fees paid to StubHub. This reservation is rejected. Nothing in the Policy gives Underwriters any such right. Nor do Underwriters have any such rights under Illinois law. *See General Agents*, 215 Ill. 2d at 162-63, 828 N.E.2d at 1102 (2005) (insurer must defend both covered and uncovered claims and may not unilaterally modify insurance contract through reservation of rights to recoup defense costs for uncovered claims).

In order to avoid bad faith liability, we urge Underwriters to reconsider their position and confirm that they will continue to defend StubHub against the Patriots' lawsuit. Nothing contained in this correspondence shall constitute an admission, waiver or limitation of any of the facts, rights or remedies of the StubHub, or any other affected party, all of which are expressly reserved.

We look forward to your response. Please feel free to contact me if you have any questions.

Very truly yours,

Keith A. Meyer

cc:    Allyson Willoughby, Esq.
       Michelle Fang, Esq.

DM_US:20509667_2

EXHIBIT "F"



**COZEN**
**O'CONNOR**
ATTORNEYS

A PROFESSIONAL CORPORATION

SUITE 1500     222 SOUTH RIVERSIDE PLAZA     CHICAGO, IL 60606-6000
312.382.3100     877.992.6036     312.382.8910 FAX     www.cozen.com

Josh M. Kantrow
Direct Phone 312.382.3149
Direct Fax     312.382.8910
jkantrow@cozen.com

June 20, 2007

**VIA E-MAIL AND US MAIL**

Mr. Keith A. Meyer
Howrey LLP
550 South Hope Street
Suite 1100
Los Angeles, California 90071-2627

Re:    Insured:      StubHub
        Claimant:    NPS LLC and New England Patriots, L.P.
        Policy No.:   SF604690Z
        Policy Period: May 1, 2006 to February 13, 2007
        Our Ref.:     195933

Dear Mr. Meyer:

      From your June 14, 2007 correspondence, we understand that StubHub, Inc. disputes Underwriters' coverage position as set forth in our January 12 and May 3, 2007 correspondence. In this context, this letter provides StubHub with Underwriters' reply to the assertions made in the June 14, 2007 correspondence, and sets forth a suggested course of action, pursuant to the Policy terms, for the resolution of this dispute.

      As discussed more fully in Underwriters' coverage correspondence, the basis for Underwriters' denial of coverage is that the complaint filed by NPS LLC and New England Patriots, L.P. (the "claimants") against StubHub, Inc. does not allege a "claim" or "damages" as those terms are defined in the Policy. Specifically, the damages sought by claimants, as outlined in the complaint, are not "damages" under the Policy. In the complaint, claimants seek only the establishment of a "constructive trust containing three times the revenues defendants improperly received" (thus, restitution, disgorgement of profits, the return of fees, charges, or commissions, punitive, exemplary, or treble damages) and/or injunctive relief. However, as noted in our prior correspondence, the definition of "damages" in the Policy explicitly excludes such relief from coverage.

Mr. Keith A. Meyer
June 20, 2007
Page 2

---

While you attempt to explain at great length in your correspondence that the complaint does seek damages, as that term is generally defined in the legal community, you fail to recognize or otherwise acknowledge that the term "damages" has a specific meaning under the Policy. Based on the express Policy definition, the complaint fails to seek any damages that could potentially be covered by the Policy. As such, the relief sought by claimants does not constitute covered "damages" and where there are no covered "damages", there can be no "claim" since the definition of "claim" is dependant on whether the claimant seeks covered "damages."

Although we do not disagree with the principles set forth in your recitation of general Illinois or California insurance coverage case law, your application of this law is misguided and otherwise inapt to the specific Policy wording at issue in this matter. Not only are the cases referenced distinguishable on their facts, but they also are inapplicable to the unique Policy wording at issue here. When reviewing the allegations and assertions set forth in claimants' complaint, and comparing those allegations and assertions to the Policy language, there can be no doubt that the relief sought by claimants does not comprise "damages" under the Policy.

Moreover, the Policy clearly states that it shall be interpreted according to Illinois law. As such, any reliance on California law is misplaced and irrelevant in analyzing whether coverage is afforded under the Policy for this matter. It is interesting and notable that you rely on California law when it is favorable to StubHub's position, but then fail to reference California law when it is clearly unfavorable to StubHub's position. *See Buss v. The Superior Court of Los Angeles County (Transamerica Ins. Co.)*, 16 Cal. 4th 35, 50, 939 P.2d 766, 776 (1997) (finding that an insurer may seek reimbursement for defense costs for claims that are not covered by the policy).

On the issue of Underwriters' conduct in this matter, your comments frankly seem rather disingenuous. In your correspondence, you state that "Underwriters notified StubHub that it was unilaterally withdrawing its defense" and that "Underwriters' abrupt withdrawal of its defense constitutes a breach of the implied covenant of good faith and fair dealing." However, the May 3, 2007 letter could not be more clear that Underwriters, as a show of good faith, "will continue to defend StubHub in accordance with the Litigation Management Guidelines and our discussions with defense counsel until the coverage issues are resolved."

While Underwriters denied coverage for the reasons stated herein and in the prior coverage correspondence, and reserved their rights accordingly, at no time did Underwriters "withdraw their defense" of StubHub. To the contrary, Underwriters expressly represented to StubHub that Underwriters will continue defending StubHub while the parties work out these coverage disputes.

Moreover, Underwriters' conduct is consistent with the Policy language. When Underwriters raised the issues set forth in the May 3, 2007 correspondence, they also invoked the Policy's dispute resolution provisions. This was done so that the coverage issues could be resolved as quickly and as efficiently as possible.

Mr. Keith A. Meyer
June 20, 2007
Page 3

---

Even if Underwriters' conduct could somehow be construed as a withdrawal of their defense, which it cannot, StubHub has not been prejudiced by this conduct. StubHub has not been denied effective counsel and has not been asked to alter its defense or settlement strategy because of Underwriters' coverage position. Moreover, Underwriters have not refused or objected to any defense strategy or procedure. To make it perfectly clear we will state again - as the parties continue to work toward a resolution of the coverage issues according to the Policy terms, Underwriters will continue to provide a defense for this matter.

Going forward, and as set forth in our May 31, 2007 correspondence to StubHub's Legal Director, we propose moving forward to resolve these coverage issues. Both sides have now clearly stated their positions in the various correspondence referenced above, and to avoid further delay and expense, the parties should move toward resolution, rather than engage in a letter writing campaign.

In this context, as noted in our May 31 correspondence, we suggest that the parties engage in mediation to resolve this dispute. **Please advise by June 22, 2007 as to whether StubHub agrees to this proposed approach.** Otherwise, and pursuant to the Policy terms, Underwriters hereby demand that this dispute be submitted for non-binding resolution under the current CPR Model Mini-Trial Procedures in effect on May 1, 2006.[1]

Underwriters continue to reserve all of their rights and defenses available at law, in equity, or under the Policy, whether expressly stated herein, in our January 12, 2007 correspondence, in our May 3, 2007 correspondence, or otherwise. It is to be understood that any and all investigation, settlement negotiations, or other activity undertaken thus far, or to be undertaken by or on behalf of Underwriters in connection with this matter shall be subject to this reservation, and that such activity is not and will not be construed as any admission by Underwriters.

We look forward to hearing from you concerning StubHub's determination whether it agrees to proceed with mediation as proposed. If StubHub does not agree to the proposed mediation, we will endeavor to contact you toward the close of business on June 22, 2007 to select a mini-trial neutral advisor as set forth in the Policy.

---

[1] Section V, subsection N of the Policy also provides that "The parties agree that no suit will be filed by either party against the other party seeking resolution of any dispute arising out of or relating to this Policy until the parties have (1) attempted to negotiate a resolution, (2) completed the non-binding CPR Mini-Trial proceeding through decision, and (3) thirty days have elapsed since the conclusion of the non-binding CPR Mini-Trial proceeding."

Mr. Keith A. Meyer
June 20, 2007
Page 4

Very truly yours,

COZEN O'CONNOR

By:     Josh M. Kantrow

LSN/JMK/BAS

cc:     Ms. Allyson Willoughby - Legal Director, StubHub
        Mr. Michael Lamprecht – Gallagher CyberRisk Services